## In re O'Connell's Estate.

*(Surrogate's Court, Essex County, Filed November, 1892.)*

DEBTS—WHEN POLICY MONEYS APPLICABLE IN PAYMENT.

    A universal devisee and legatee under a will, who after the resignation of the executor, became administrator with the will annexed, cannot, until decedent's debts are paid, retain the proceeds of a fire policy upon a house and barn upon the real estate devised to him, on the ground that on the renewal of such policy held by decedent he had instructed the insurance agent to have such proceeds made payable to himself personally, and not to decedent's estate. Such proceeds could only belong to him when decedent's debts and legacies were paid.

Petition by A. S. Prime, a creditor of decedent, for an order that petitioner's claim be paid by the administrator with the will annexed, out of moneys of the estate alleged to have been received by him.

F. A. Smith, for petitioner; P. C. McRory, for administrator c. t. a.

McLaughlin, S.—Michael O'Connell died in 1884, leaving a last will and testament, by which he devised, subject to the payment of his debts and the payment of certain legacies, all his real and personal estate to his only son, Michael, the contestant, and the present administrator with the will annexed. At the time of O'Connell's death he was possessed of real estate of the

value of $1,350, and also personal property of the value of
about $316. The will was admitted to probate, and letters tes-
tamentary thereon issued, on the 15th day of January, 1887, to
the executor named in said will, one William J. Harrington,
who qualified and continued to act as executor until September,
23, 1889, when a judicial accounting was had in this court, and
a decree entered. This decree shows that the total amount of
personal estate which had come to the hands of the executor was
$316.38, and the total expenses of administration $395.73,
and that valid claims against the estate had been presented and
allowed, amounting in the aggregate to nearly $900, and among
the other claims presented and allowed was the claim of the
petitioner. On the 23rd day of January, 1890, the petitioner
commenced proceedings in this court for the disposition of the
real estate of said deceased for the payment of debts, and there-
after said proceeding was prosecuted to a sale, and all of the
real estate of said deceased, on the 26th day of December, 1890,
sold, and the proceeds realized therefrom applied towards the
payment of debts; not enough, however, being realized to pay
the debts in full. After making such application, there re-
mained due the petitioner upon his own claim and claims which
had been theretofore duly assigned to him, the sum of $244.91,
and no question is made upon this proceeding but that the claim
of the petitioner is a valid claim against the estate, and that
there is due him the sum of $244.91. On March 23, 1890,
and while the proceeding above mentioned was pending for the
sale of the real estate, Harrington resigned as such executor,
and the present administrator, on the same day, upon his own
application, was appointed administrator with the will annexed.
At the time of the death of the deceased he held a policy of fire
insurance upon the house and barn which stood upon the real
estate above mentioned, which policy of insurance was there-
after, and while Harrington was executor, twice renewed, or
new policies issued. The last policy so issued expired April
20, 1889, and on that day, at the request and on the application

of the contestant, a new policy of insurance was issued by the Aetna Fire Insurance Company upon the house and barn, the loss, if any, being made payable to the "estate of Michael O'Connell, deceased." On the 30th day of January, 1890, the house and barn mentioned in the policy were destroyed by fire, and thereafter the contestant, as the "administrator of the estate of Michael O'Connell, deceased," made proofs of loss, and verified the same by his affidavit, in which he stated, among other things, that the property destroyed belonged to the "estate of M. O'Connell, deceased," and immediately thereafter, and on the 6th of March, 1890, the insurance company paid to the contestant, "as the administrator of M. O'Connell, deceased," the sum of $700, in full for such loss, and the said Michael, as the administrator of the estate of his father, gave to said insurance company his written receipt therefor. It is conceded that the property destroyed belonged to the estate of Michael O'Connell, deceased, and that any loss occurring thereunder was, by the terms of the policy, made payable to said estate. It is also conceded that the contestant, as the administrator of the said estate, made proofs of loss, received the insurance money, and receipted for the same as such, and that he has never accounted for this money, or any part of it. The claim of the contestant is that the money received from the insurance company does not belong to the estate of Michael O'Connell, deceased, but that it belongs to him personally, because, when the policy was issued, he instructed the insurance agent who wrote the policy to make the loss, if any, payable to him; and that he personally paid the premium on the policy, and supposed the policy was so issued, until after the loss occurred; that it was made payable to the estate by the mistake of the agent who wrote the policy. The only question, therefore, presented upon this application is whether the money received from the insurance company is part of the assets of the estate of Michael O'Connell, deceased, and to be administered as such by the administrator, or whether it belongs personally to the contestant.

Conceding the contention of the contestant, viz., that he gave directions to the insurance agent to issue the policy to him personally, and that the same was made payable to the estate only by a mistake of the agent who wrote the policy; or, conceding that the policy had been issued just as contestant claims it should have been—I am of the opinion that this money would, in that event, belong to the estate, and should be applied towards the payment of the debts of the deceased. The contestant could have no interest in the property covered by the policy, except by virtue of his father's will. The only right or interest he had, or could have, was by virtue of that paper. The will directs that the property of the intestate shall be first used to pay his debts and certain legacies, then the remainder, if anything, to belong to the contestant. So that the contestant could have no interest in any of the property as against creditors until their claims had been paid; and, while he might assume or attempt to act so as to protect only his own personal interest in the property devised, yet whatever pecuniary benefit was derived from the property for such acts of his must be held to be for the benefit of creditors until their claims had been satisfied. To hold otherwise would be to defeat the intention of the intestate as expressed in the will. When the contestant assumed to act—assumed to claim an interest in the property, even an insurable interest—he could only do so by first protecting creditors, managing the property as a trustee, as it were, for their benefit. He held all of the property in trust for the benefit of creditors and legatees until the debts and legacies were fully paid. It is true, he was not obliged to pay his father's debts; he was not obliged to pay the legacies mentioned in the will; he was not obliged to do any act in reference to carrying out the intention of his father as manifested in the will; but when he once assumed to act, which he did, according to his own contention, by attempting to insure his personal interest in the property devised, then that moment there was a legal obligation on his part to so use and protect the property devised that it should

first pay the debts of the deceased. But the contention of contestant that the policy was made payable to the estate by a mistake is not supported by the evidence in the case; on the contrary, the evidence clearly shows that when the policy was issued it was contestant's intention to protect the interest of the estate, and not solely his personal interest. The policy itself is made payable to the estate. The proofs of loss, which were made out and verified by the contestant himself, state that the property belonged to the estate. He receiped for the money as administrator, and every act which he took in relation to the insurance or the collection of the insurance money would seem to indicate clearly his intention in that respect as above expressed. I am of the opinion, therefore, that the money received from the insurance company belongs to the estate of Michael O'Connell, deceased, and that the application of the petitioner should be granted, with $35 costs, and witnesses' fees, and $15 fees of stenographer, to be paid out of the estate; and an order may be entered to that effect.